**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

LINDA BURKET,                    )        CASE NO. 1:12-CV-0055
                                 )
           Plaintiff,            )
                                 )        MAGISTRATE JUDGE
           v.                    )        VECCHIARELLI
                                 )
MICHAEL J. ASTRUE,               )
     Commissioner of Social Security,    )
                                 )        **MEMORANDUM OPINION AND**
           Defendant.            )        **ORDER**

        Plaintiff, Samantha Clark ("Plaintiff"), challenges the final decision of Defendant,

Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying her

application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a), and Period of Disability ("POD") and

Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i), 423.

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

        On September 23, 2008, Plaintiff filed her applications for POD, DIB and SSI

and alleged a disability onset date of January 15, 2007. (Transcript ("Tr.") 62.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On October 21, 2010, an ALJ held Plaintiff's hearing. (*Id*.) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id*.) A vocational expert ("VE") also participated and testified. (*Id*.) On May 6, 2011, the ALJ found Plaintiff not disabled. (Tr. 71.) On November 9, 2011, the Appeals Council declined to review the ALJ's decision; thus, the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On January 10, 2012, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On June 28, 2012, Plaintiff filed her Brief on the Merits. (Doc. No. 16.) On August 27, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 18.) Plaintiff did not file a Reply Brief.

Plaintiff argues that insufficient evidence supports the ALJ's conclusions regarding her residual functional capacity ("RFC") and her past relevant work. The Commissioner argues that the ALJ's decision is supported by substantial evidence in the record.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff graduated from high school and completed one year of college. (Tr. 186.) She was born on March 12, 1962 and, thus, was 48 at the time of her administrative hearing. (Tr. 154.) She had past relevant work as an assistant manager, assistant supervisor, cashier, vending machine attendant and home health aide. (Tr.

2

40-45, 181, 206-11, 221, 228-33, 241.)   She also worked in a seasonal position as a cashier at H&R Block.  (Tr. 43-44.)  She resided with her three sons and infant grandson.  (Tr. 199, 1236.)

### B.    Medical Evidence

#### 1.    Treating Providers

On February 26, 2007, Plaintiff sought treatment at the emergency department of South Pointe Hospital, complaining of pain and swelling in her right lower leg and ankle.  (Tr. 359.)  Physicians there diagnosed her with a right ankle sprain, placed her in a stirrup splint, prescribed Vicodin and instructed her to follow up with her family physician, Arun Gupta, M.D.  (Tr. 362.)  On March 5, 2007, Plaintiff was examined by Dr. Gupta, who noted that her right foot was swollen and tender.  (Tr. 531.)  Dr. Gupta's diagnosis is not clear from the record of the examination, as the notations are largely illegible.[1]  (*Id*.)  However, it appears that he recommended physical and occupational therapy.  (*Id*.)

Plaintiff returned to the South Pointe emergency department on March 6, 2007, complaining that she was having difficulty breathing.  (Tr. 346-49.)  She also reported right ankle tenderness.  (Tr. 349.)  She was diagnosed with asthma dyspnea resolved, and discharged in stable condition.  (Tr. 349.)

On March 8, 2007, Plaintiff was examined by Susan Joy, M.D., an orthopedist,

---

[1]    Dr. Gupta's handwritten notations are consistently illegible throughout. They are described herein to the greatest extent that they are capable of interpretation.  Further, on two occasions, Dr. Gupta's notes include a phrase that appears to be "had a long discussion."  (Tr. 540, 541.)  There is no indication, however, of the subject of those discussions, if that is what is written in his notes.

apparently at Dr. Gupta's request.  (Tr. 327.)  Dr. Joy noted Plaintiff's complaints of right

lateral ankle pain, swelling and discomfort.  (*Id*.)  During the exam, Plaintiff ambulated

with some mild antalgia, and her right ankle was mildly swollen.  (Tr. 328.)  Dr. Joy

diagnosed Plaintiff with peroneal tendinitis with significant symptoms and

recommended that Plaintiff wear a boot for support and ambulation, and follow up in

three weeks.  (*Id*.)

On April 1, 2007, Dr. Gupta admitted Plaintiff, who has a history of deep vein

thrombosis ("DVT") and pulmonary embolism ("PE"), to South Pointe Hospital for

treatment for Coumadin toxicity.  (Tr. 463-64.)  After undergoing observation and a

cystoscopy, she was discharged on April 3, 2007, with instructions to follow up with Dr.

Gupta.  (Tr. 477, 487-88.)

On April 10, 2007, Dr Joy examined Plaintiff, who reported mild improvement in

her pain, but no decrease in swelling, while wearing the boot on her right ankle.  (Tr.

324.)  Dr. Joy noted Plaintiff's complaint that she had experienced some pain in her left

ankle as well.  (*Id*.)  Dr. Joy recommended that Plaintiff obtain an MRI of her right ankle,

which she did on April 20, 2007.  (Tr. 324, 325-26.)  The MRI revealed some edema

laterally, but no longitudinal tear and minimal degenerative changes.  (Tr. 325.)  On

April 26, 2007, Plaintiff complained of continued pain in her right ankle, as well as some

pain up into her right knee.  (Tr. 322.)  Dr. Joy noted that Plaintiff had good ankle range

of motion and no significant effusion.  (*Id*.)  Dr. Joy diagnosed Plaintiff with lateral ankle

pain and peroneal tendinopathy/possible subluxation and right knee pain.  (*Id*.)  Dr. Joy

recommended that Plaintiff undergo a functional rehabilitation program and use an

4

ankle brace.  (*Id*.)

On May 4, 2007, Plaintiff was examined by Matthew J. Grant, D.C., who noted her complaints of throbbing pain in her right foot.  (Tr. 333.)  She underwent right talus adjustment, spinal manipulation and interferential current.  (Tr. 334.)  Plaintiff treated with Dr. Grant on eight occasions throughout May and June 2007.  (Tr. 335-42.)  In his final treatment note, Dr. Reed noted that Plaintiff's foot pain bothered her between 25 and 50 percent of the time, but that it did not affect her daily activities.  (Tr. 342.)

On August 31, 2007, orthopedic specialist James Sferra, M.D., examined Plaintiff, noting her complaints of pain in her left and right feet and ankles.  (Tr. 572.)  He described her symptoms as "neuritic," including numbness, tingling, and cold and hot sensations.  (*Id*.)  Dr. Sferra opined that Plaintiff had neuritic symptoms of unclear etiology, but ruled out conducting a nerve conduction study due to her Coumadin use.  (*Id*.)  Observing that Plaintiff had a component of plantar fasciitis, Dr. Sferra recommended that she use a night splint and heel cushions, perform heel cord stretching exercises, and ice the painful areas at the end of the day.  (*Id*.)  An x-ray of Plaintiff's feet and ankles revealed left and right small posterior calcaneal enthesophytes, and a left arthrodesis of the talonavicular joint with solid union.  (Tr. 574.)

Plaintiff was treated by Dr. Gupta on September 22, 2007.  (Tr. 538.)  To the extent that the record of the exam is legible, it reflects that Dr. Gupta noted Plaintiff's complaint of left wrist pain.  (*Id*.)  An x-ray of Plaintiff's right wrist revealed radiocarpal joint space narrowing, generalized demineralization and minimal osteoarthritic change.  (Tr. 378.)

5

On November 5, 2007, Plaintiff underwent a pain management consultation at South Pointe, where she complained of pain in her upper and lower back, her hands and her feet and ankles, as well as headaches, and swelling in her feet, ankles and wrists. (Tr. 873-79.)  She rated her pain as ranging from 0 to 5 out of 10.  (Tr. at 880.) Lokesh Ningegowda, M.D., diagnosed Plaintiff with wrist, ankle and myofascial pain, concluded that there was no role for interventional pain management, and recommended that Plaintiff obtain a rheumatology consult.  (Tr. 880-81.)

On November 29,2 2007, Dr. Gupta diagnosed Plaintiff with a migraine headache, and noted her complaints of wrist pain.  (Tr. 540.)  On December 3, 2007, Plaintiff was examined by rheumatologist and pain management specialist Howard Smith, M.D., who noted her complaints of intermittent right ankle pain, mild-to-moderate sporadic dull pain in her legs, pain and swelling in her joints, muscle weakness, stiffness and mild-to-moderate restrictions in working, dressing and attending to her personal needs.  (Tr. 523.)  Dr. Smith noted that Plaintiff reported a family history of lupus, and diagnosed her with a possible antiphospholipid syndrome.[2]  (Tr. 525.)  He recommended that she begin Celebrex therapy to control her pain.  (*Id*.)  Dr. Smith referred Plaintiff to physical therapy in February 2008.  (Tr. 547.)  Although Plaintiff attended the initial evaluation session, she cancelled her first physical therapy appointment and failed to show for, or call regarding, her subsequent appointments.

---

[2]  Antiphospholipid syndrome is "a multisystem inflammatory disorder characterized by the presence of circulating antiphospholipid antibodies and by thrombosis and vascular occlusion, spontaneous abortion, thrombocytopenia, valvular heart disease, and other less frequent symptoms."  *Dorland's Illustrated Medical Dictionary* 1810 (Saunders, 30th ed. 2003).

6

(Tr. 547-51.)  In March 2008, Plaintiff was discharged from physical therapy due to noncompliance with the plan of care.  (Tr. 552.)

On May 6, 2008, Plaintiff returned to Dr. Joy, complaining of severe pain following a fall down three steps at her home.  (Tr. 567.)  An x-ray of Plaintiff's left foot revealed a nondisplaced fracture of the base of her fifth metatarsal.  (Tr. 554.)  Dr. Joy recommended a posterior splint, non-weight bearing, elevation and icing.  (Tr. 568.)  On May 9, 2008, after obtaining an MRI of Plaintiff's left foot, Dr. Joy diagnosed her with foot and ankle osteoarthritis with a recent fracture of the base of her fifth metatarsal. (Tr. 563-64.)  She recommended boot immobilization and a night splint, as well as icing and elevation.  (Tr. 564.)  On June 6, 2008, Plaintiff reported that she had been "quite comfortable" while splinted, and that she had attempted to put some weight on her left foot.  (Tr. 612.)  During an examination in July 2008, Plaintiff reported to Dr. Joy that "her lupus is flaring up," and that she was experiencing cramping and tightening in multiple muscle groups.  (Tr. 616.)  Dr. Joy noted no abnormal motor activity and no acute distress.  (*Id*.)  Dr. Joy recommended custom-molded orthotics and physical therapy.  (Tr. 617.)

At a July 21, 2008 physical therapy appointment, Plaintiff reported that she had been using a wheelchair for the prior five weeks, and claimed a history of lupus that flared up three to four days per week.  (Tr. 620.)  During a July 31, 2008 physical therapy session, Plaintiff's therapist told her that she could purchase a cane to use as needed, but opined that it was "not expected for long term use."  (Tr. 628.)  During an August 18, 2011 appointment to obtain her orthotics, Plaintiff reported that she had cancelled her two prior physical therapy appointments due to arm pain, that she was

7

performing her home exercises only every other day – as opposed to every day as instructed – and that she was not taking any pain medication.  (Tr. 633.)

Plaintiff sought treatment at the Center for Families and Children beginning in December 2009, when a physician[3] noted that Plaintiff was using a wheelchair and reported a history of lupus. (Tr. 1223.)  The physician diagnosed Plaintiff with depression, anxiety not otherwise specified, and somatoform disorder not otherwise specified.  (*Id.*)  On January 15, 2010, Plaintiff reported that she used a walker at home, and a wheelchair outside.  (Tr. 1219.)  Plaintiff was prescribed Celexa.  (Tr. 1215.)  On February 19, 2010, the physician noted that, "[p]er Dr. Gupta," Plaintiff "should not be using a wheelchair and doesn't have a confirmed diagnosis of lupus."  (Tr. 1216.)  The physician noted that Dr. Gupta had reported, "'She exaggerates her symptoms.'"  (*Id.*)  Throughout her treatment, Plaintiff complained of body pain and discomfort.  (Tr. 1214, 1218,1223.)  On March 26, 2012, Plaintiff failed to attend a scheduled appointment.  (Tr. 1212.)

Throughout March, April and May 2010, Plaintiff underwent physical therapy for pain in her knees.[4]  (Tr. 1126-65, 1170-73.)  On May 3, 2012, Plaintiff's physical therapist opined that Plaintiff, "overall" seemed "to be getting better," and that cracking in Plaintiff's knees was less frequent than before.  (Tr. 1126.)  Plaintiff reported that she

---

[3]   Although followed by "M.D.," the name of the individual who treated Plaintiff at the Center for Families and Children is not legible.  (Tr. 1220.)

[4]   Although the records of these physical therapy appointments reflect that Dr. Joy referred Plaintiff for physical therapy for her knees (Tr. 1170), the administrative transcript does not contain a corresponding record from Dr. Joy.

8

felt like she was at "50% of overall normal functional mobility." (*Id.*)  Plaintiff was

discharged from therapy on May 3, 2010, with instructions to remain active with her

home exercise program.  (Tr. 1126-27.)

In October 2010, Plaintiff was examined by neurologist Robert F. Richardson,

M.D., who noted her complaints of pain in her legs and knees, resulting in difficulty

ambulating.  (Tr. 1281-82.)  Dr. Richardson diagnosed Plaintiff with small fiber

peripheral neuropathy.  (Tr. 1282.)  He recommended that she undergo an

electromyography ("EMG") and a nerve conduction study ("NCS").  (*Id.*)  A November

12, 2010 EMG and NCS was normal.  (Tr. 1279-80.)

### 2.      Physician Reports and Agency Reports and Assessments

In an undated statement, Plaintiff claimed that she was disabled due to lupus,

pain in both legs and chest pain.  (Tr. 307.)  She stated that her health "is declining and

I am now in a wheelchair." (*Id.*)  In an August 11, 2008 certificate of professional care,

Dr. Gupta wrote that Plaintiff "cannot return to work."  (Tr. 710.)   However, another

version of the August 11, 2008 certificate is included in the record, and it lists diagnoses

of "gross hematuria, [illegible] hypercholesterol, anemia, lupus." (Tr. 709.)  In an

August 20, 2008 assessment completed for the Ohio Department of Jobs and Family

Services, Dr. Gupta reported that Plaintiff could not stand, and was markedly limited in

pushing/pulling, bending, reaching, handling and repetitive foot movements.  (Tr. 674.)

He opined that Plaintiff's physical limitations would last 12 months or more.  (*Id.*)  In

October 2008, Plaintiff reported that she was "confined to a wheelchair," which had

been prescribed to her by Dr. Joy after she broke her foot in May 2008.  (Tr. 215.)

9

In a January 22, 2009 assessment completed for the state agency, Dariush Saghafi, M.D., noted Plaintiff's chief complaint as "I have lupus," and reported that Plaintiff used a wheelchair due to pain in her left leg.  (Tr. 902.)  Plaintiff reported moderate to severe pain while performing the motions requested by Dr. Saghafi.  (Tr. 903.)  Dr. Saghafi could not examine Plaintiff's spine because she was wearing a jacket and it was too painful for her to remove it.  (Tr. 904.)  He could not assess her gait because pain in her left leg prevented her from moving beyond a standing position. (*Id*.)  Dr. Sahgafi diagnosed Plaintiff with a moderately severe case of systemic lupus erythematosus ("SLE"), and opined that she was able to lift, push and pull in a limited fashion, depending on the amount of pain she was experiencing, and that she was unable to bend, walk or stand due to the pain in her left leg.  (*Id*.)  Dr. Saghafi concluded that Plaintiff could perform work in a seated position, but could not lift anything heavier than paper files or very light objects.  (*Id*.)

On February 12, 2009, agency physician Willa Caldwell, M.D., performed a residual functional capacity assessment and determined that Plaintiff had the following limitations: occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; sitting, standing and/or walking for about 6 hours in an 8-hour workday; occasionally climbing ramps or stairs, stooping, kneeling, crouching and crawling; and never climbing ladders, ropes or scaffolds. (Tr. 911.)  She determined that Plaintiff should avoid concentrated exposure to fumes, odors, gases and poor ventilation.  (Tr. 914.)  Dr. Caldwell noted that the limitations she suggested were different from those suggested by Dr. Saghafi, but explained that Dr. Saghafi had based his conclusions on Plaintiff's subjective complaints of pain in her left leg, whereas the

objective medical evidence did not support Plaintiff's claim that she was wheelchair-bound.  (Tr. 916.)

### C.    Hearing Testimony

#### 1.    Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified as follows:

She used a walker all the time, except when her legs felt tight and stiff, when she used a wheelchair.  (Tr. 18-19, 20.)  Neither the walker nor the wheelchair had been prescribed by any physician.  (Tr. 33.)  For the prior three weeks, her legs had been getting weaker and tighter.  (Tr. 19.)  Plaintiff's breathing was affected by perfumes, colognes and any strong odors, which caused her to cough.  (Tr. 26.)  She coughed constantly and had chest pains.  (Tr. 28.)  Her leg pain lasted year round, and some days she was not sure whether she would be able to get out of bed or off of the couch. (Tr. 27.)  She used the walker because her legs ached and gave out, and it made her feel more secure to hold onto something.  (*Id.*)  Plaintiff's wrists ached, and her right arm frequently went numb.  (Tr. 30.)  She experienced migraines – accompanied by vomiting and light sensitivity– lasting three or four days each week.  (Tr. 31-32.)

Plaintiff worked for H&R Block during tax season in 2005. (Tr. 33.)   The company had contacted her about working again, but she explained that she could not do so.  (Tr. 16-17.)  When she worked for H&R Block, she was a cashier and did filing. (Tr. 43-44.)

#### 2.    Vocational Expert's Hearing Testimony

The VE testified that Plaintiff's position at H&R Block was "called a cash

11

accountant clerk," and that "DOT's probably going to call it Cashier I as opposed to someone behind a register."  (Tr. 45.)  The VE opined that, although the agency would likely rate the Cashier I position as skilled sedentary work at level 5, based on Plaintiff's description of the position, it was "done more at a semi-skill, level 4 maybe."  (*Id.*)  The ALJ asked the VE whether a hypothetical individual with the following restrictions could perform Plaintiff's past relevant work: limited to a range of light work; never climbing ladders, ropes or scaffolds; frequent handling and fingering, occasionally climbing ramps and stairs; occasionally stooping, kneeling, and crouching; and avoiding concentrated exposure to fumes and odors could perform Plaintiff's past work.  (Tr. 46-47.)  The VE opined that the hypothetical individual could perform all of Plaintiff's past relevant work.  (Tr. 47.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate

that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Act through March 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since January 15, 2007, the alleged onset date.

3.    The claimant has the following severe impairments: lupus, history of deep vein thrombosis, somatoform disorder not otherwise specified, and asthma.

13

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the record, I find that the claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except the claimant is to never climb ladders, ropes, or scaffolds.  She is limited to frequent handling and fingering.  She can occasionally climb ramps and stairs.  She is limited to occasional stooping, kneeling and crouching.  She must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc. (if she does, her asthma is non-severe).

6.    The claimant is capable of performing past relevant work as a cash account clerk.  This work does not require the performance of work-related activities precluded by the claimant's RFC.

7.    The claimant has not been under a disability, as defined in the Act, from January 15, 2007, through the date of this decision.

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

14

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.**    **Plaintiff's Assignments of Error**

Plaintiff argues that there is insufficient evidence to support the ALJ's conclusions regarding: (1) her RFC; and (2) her past relevant work as a cash accountant clerk at H&R Block.  The Commissioner responds that the ALJ's decision is supported by substantial evidence in the record.

**1.**    **Plaintiff's RFC**

**a.**    **Weight Assigned to Physicians' Opinions**

Plaintiff argues that the ALJ erred in declining to give weight to the opinions of Drs. Gupta and Saghafi.  The Commissioner responds that the ALJ sufficiently explained her reasons for declining to give either controlling weight to Dr. Gupta's opinion or any weight to Dr. Saghafi's assessment.

Plaintiff's arguments are not well taken.  Generally, the ALJ must give controlling weight to the opinion of a treating physician when such opinion is well-supported by clinical and laboratory findings and "not inconsistent" with other substantial evidence.

15

*See* 20 C.F.R. § 416.927(d); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); SSR 96-2p.  "However, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (citations omitted), *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

Here, the ALJ offered several reasons for declining to afford controlling weight either to Dr. Gupta's conclusion that Plaintiff was not able to work, or to his determination of Plaintiff's limitations.  She noted that Dr. Gupta did not explain his conclusions, and that, because the records of his examinations of Plaintiff were illegible, there was no way to determine if sufficient medical data supported his determination that Plaintiff was unable to work.[5]  (Tr. 70.)  She also correctly observed that Dr. Gupta's conclusion that Plaintiff was disabled was not supported by other evidence in the medical records (Tr. 70), as no other physician opined that Plaintiff was incapable of working.  Further, the illegibility of Dr. Gupta's records is apparent from the

---

[5]  Although the ALJ has a duty to fully develop the record, *see Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), here, Plaintiff does not argue that the ALJ erred in failing to clarify Dr. Gupta's notes.  Accordingly, she has waived any argument on this point. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

16

transcript of proceedings in this case, as is the conclusory nature of Dr. Gupta's assertion that Plaintiff could not return to work.  *See Hall*, 837 F.2d at 276.  Accordingly, the ALJ gave good reasons for declining to assign controlling weight to Dr. Gupta's opinion, and substantial evidence supports that conclusion. [6]

Substantial evidence also supports the ALJ's conclusion that Dr. Saghafi's opinion merited little weight.  The ALJ declined to afford greater weight to Dr. Sagahfi's opinion because it was inconsistent with the objective medical evidence and with the RFC.  (Tr. 70.)  Plaintiff argues that the ALJ erred in assigning greater weight Dr. Caldwell's conclusions – which were based on a review of the medical records – than to the opinion of Dr. Saghafi – which was based on his examination of Plaintiff.  Plaintiff's arguments lack merit.

As a preliminary matter, Dr. Saghafi examined Plaintiff on only one occasion, and, thus, his opinion is entitled to no special deference.  *See Atterberry v. Sec'y of*

---

[6]  The ALJ also observed that there were two versions of the August 11, 2008 note in the record, and opined that the handwriting adding the diagnoses to the note was different from the handwriting on the (presumably) original version.  (Tr. 70.)  Although Plaintiff does not address this observation, this Court does not agree that the two sets of handwriting are sufficiently different to be suspicious.  *Compare* Tr. 709 *with* Tr. 710.  Accordingly, to the extent that the ALJ was suggesting that Plaintiff altered the notice to include several diagnoses, there is likely not sufficient evidence to support that conclusion.  However, given that other substantial evidence supports the ALJ's decision to decline to give controlling weight to Dr. Gupta's opinion, remand is not necessary on this issue.  *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).

17

*Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989).  Further, the ALJ explained her reasons for rejecting Dr. Saghafi's opinion, noting that it contradicted the objective medical evidence.  This explanation is supported by substantial evidence in the record. The ALJ discussed at length the medical records from Plaintiff's various physicians. (Tr. 66-71.)  With the exception of Dr. Gupta, whose conclusions were not sufficiently supported because his records are illegible, none of the physicians assigned Plaintiff the same limitations as Dr. Saghafi, or otherwise determined that Plaintiff was incapable of working.  Further, as noted by Dr. Caldwell in her RFC assessment, Dr. Saghafi based his conclusions regarding Plaintiff's limitations on Plaintiff's subjective complaints of pain, rather than objective medical evidence.  Accordingly, the record contains no credible objective medical evidence supporting Dr. Saghafi's suggested limitations, and substantial evidence in the record supports the ALJ's decision to assign little weight to Dr. Saghafi's conclusions.[7]

### b.    Other Evidence of Plaintiff's Limitations

Plaintiff also argues that the ALJ erred in failing to consider other evidence of Plaintiff's "lengthy history of significant ankle and knee abnormalities."  (Pl. Br. at 15.) The Commissioner notes that the ALJ considered Plaintiff's subjective complaints of knee and ankle problems, but found that they were not entirely credible.  Plaintiff's

---

[7]    Plaintiff also argues that the ALJ erred in relying on inconsistencies between Dr. Saghafi's conclusions and the RFC to reject Dr. Saghafi's opinion regarding her limitations.  Given that the ALJ relies on the medical record evidence to determine a claimant's RFC, the ALJ's reasoning on this point is circular.  While there may be some merit to this argument, because the ALJ's other basis for assigning little weight to Dr. Saghafi's opinion is supported by substantial evidence, remand is not necessary on this issue.  *See Kobetic*, 114 F. App'x at 173.

arguments lack merit.

As a preliminary matter, with the exception of Drs. Gupta and Saghafi, whose opinions are discussed above, Plaintiff offered no medical opinion that her ankle and knee problems limited her ability to work.  It is well established that the claimant bears the burden of establishing the impairments that determine her RFC.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments.*") (emphasis added). Plaintiff failed to offer medical evidence that she was not capable of working as a result of her knee and ankle problems, and, thus, did not sustain her burden of demonstrating that these impairments affected her RFC.

Further, the bulk of the record evidence regarding restrictions resulting from Plaintiff's knee and ankle problems consists of her own subjective complaints of pain and limitations.  The ALJ found Plaintiff not credible on this issue.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v.*

*Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must

provide an adequate explanation for his credibility determination.  "It is not sufficient to

make a conclusory statement 'that an individual's allegations have been considered' or

that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4

(S.S.A.).  Rather, the determination "must contain specific reasons for the finding on

credibility, supported by evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator

gave to the individual's statements and the reason for that weight."  *Id.*

       Here, the ALJ pointed to multiple bases for finding Plaintiff not credible.  The ALJ

noted that Plaintiff claimed to her physicians that she had been diagnosed with lupus

despite not having received that diagnosis.[8]  (Tr. 67.)  Further, the ALJ observed that

Plaintiff claimed to an agency representative that Dr. Joy had prescribed her

wheelchair, whereas, during her hearing testimony, she conceded that neither her

walker nor her wheelchair had been prescribed by a physician.  (Tr. 70.)  Finally, the

ALJ noted that Plaintiff failed to comply with physical therapy, despite her claims of

injury.  (Tr. 68.)  These inconsistencies are appropriate bases for an adverse credibility

finding.  *See* *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)

("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the

medical reports, claimant's testimony, and other evidence.").  Further, they are evident

in the record.  Accordingly, the ALJ's conclusion that Plaintiff was not credible regarding

---

[8]    Although Dr. Saghafi diagnosed Plaintiff with lupus in January 2009, Plaintiff
       was claiming to her medical providers that she had been diagnosed with
       lupus as early as July 2008.  (Tr. 902-04, 616, 620.)

her subjective complaints of pain is supported by substantial evidence in the record.

## 2.      Plaintiff's Past Relevant Work

Finally, Plaintiff argues that insufficient evidence supports the ALJ's conclusion that her position at H&R Block constituted past relevant work.  Specifically, Plaintiff asserts that her position as H&R Block cannot constitute past relevant work because she performed the work for a short time on a part-time basis.  The Commissioner argues that substantial evidence supports the ALJ's conclusion on this point.

Plaintiff's arguments on this point are conclusory and general.  In support of her claim that the cash accountant clerk position did not rise to the level of substantial gainful activity, Plaintiff cites to pages in the record that consist of: (1) a letter authored by her counsel in which counsel makes the same conclusory statement; (2) records of Plaintiff's employment with H&R Block, which do not reflect either the number of hours worked or the amount of money she was paid.  (Tr. 171-73.)[9]  This evidence is not sufficient to demonstrate either that Plaintiff did not work in her position long enough to learn it, or that it did not otherwise rise to the level of substantial gainful activity.  *See* 20 C.F.R. § 404.1565(a) ("Work you have already been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity.")  Further, although Plaintiff testified that she only worked at H&R Block for a short time, she also testified that the company had contacted her about

---

[9]    The record from H&R Block reflects that Plaintiff worked for that company in 2009.  (Tr. 172.)  However, during her testimony, Plaintiff explained that she received a pay check from H&R Block in error in 2009, and that she returned it.  (Tr. 33.)

working there again, which undermines her argument that she did not work there long enough to learn the position.  (Tr. 16-17.)  Finally, the Plaintiff notes that the VE did not include the cash accountant clerk position in his initial description of Plaintiff's past relevant work, and discussed it only after prompting from the ALJ.  (Tr. 45.)  However, the VE did not opine that the position was insufficient to constitute past relevant work. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff's position as a cash accountant clerk constituted past relevant work.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.


s/ *Nancy A. Vecchiarelli*

U.S. Magistrate Judge

Date: October18, 2012

22